IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02736-SKC-KAS

MAO, INC.,

    Plaintiffs,

V.

PENN ENTERTAINMENT, INC., and
AMERISTAR CASINO BLACK HAWK, LLC,

    Defendants.

## ORDER RE: MOTION TO DISMISS (DKT. 46)

    In 2005, Plaintiff MAO, Inc. (MAO or Plaintiff) and Defendant Ameristar Casino Black Hawk, LLC (Ameristar)[1]—which is a wholly owned subsidiary of Defendant PENN Entertainment, Inc. (PENN)—entered into a licensing agreement whereby Ameristar could operate five of MAO's specialized "Streak" blackjack tables at the Ameristar Casino Black Hawk (the Casino). *See* Dkt. 25, ¶90.[2] The parties extended the license agreement numerous times and executed a new agreement in

---

[1] The original lease was between MAO and Ameristar Casino Black Hawk, Inc. Dkt. 25, ¶90. The corporation converted to a limited liability company in 2016. *Id*. at ¶59.

[2] This factual background is based on the allegations in the Amended Complaint, which the Court takes as true of purposes of the Motion to Dismiss.

1

September 2011. *Id*. at ¶¶90-91. The only named parties to the license agreements and addenda extending the same are MAO and Ameristar. *Id*.

In March 2020, during the COVID-19 pandemic, the Colorado Governor ordered all casinos be closed to prevent the spread of the virus. *Id*. at ¶119. In response, PENN allegedly contacted Plaintiff to move the payment terms under the licensing agreement between Ameristar and Plaintiff "to approximately 90 days." *Id*. at ¶120. PENN also requested any lease fees be held in abeyance until the Casino reopened. *Id*. Plaintiff and PENN ultimately agreed to suspend any payment until table gaming was once again permitted in Colorado. *Id*. at ¶¶125-26. However, according to the Amended Complaint, when table gaming did resume, Defendants failed to make lease payments for September, October, November, or December. *Id*. at ¶129.

In December 2020, PENN made an unsolicited payment to Plaintiff—presumably for the amount in arrears. *Id*. at ¶132. Thereafter, the operative license agreement expired in 2021, and no extending addendum was executed. *Id*. at ¶134. Nevertheless, the Casino continued to use and offer Plaintiff's blackjack tables without payment. *Id*. at ¶135. The parties' efforts to rectify the matter and enter into a new license agreement were ultimately unfruitful, and Plaintiff initiated the present litigation. *Id*. at ¶156.

Plaintiff filed this case on October 19, 2023, solely against PENN (Dkt. 1), which PENN opposed on the basis that it was Ameristar's corporate parent and did

2

not operate the Casino. Dkt. 16. Thereafter, Plaintiff filed the operative Amended Complaint adding Ameristar as a Defendant and asserting claims against both Defendants under the Lanham Act, the Colorado Consumer Protection Act, and the Colorado Uniform Trade Secret Act, as well as claims for breach of contract and unfair competition under Colorado common law. Dkt. 25. Defendants again argue PENN is not an appropriate Defendant in this matter and should be dismissed outright. They also contend Plaintiff has failed to state claims under the various Colorado statutes and move for their dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 46.

The matter is fully briefed, and no hearing is necessary. Having considered the Amended Complaint, the Motion to Dismiss and related filings, and the controlling law, the Court dismisses Plaintiff's claim under the Colorado Consumer Protection Act, with prejudice, and the remaining claims without prejudice pursuant to Rule 8.

### A. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of

3

action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. ANALYSIS

1. **Colorado Consumer Protection Act (CCPA)**

To state a claim under the CCPA, a plaintiff must show: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it

4

significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Linings, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003). Defendants contend Plaintiff's allegations do not establish a significant public impact resulting from Defendants' alleged wrongdoings. The Court agrees.

"[I]f a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA." *Id.* at 149. In determining whether a challenged business practice significantly impacts the public to sustain a CCPA claim, courts consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.*

In its Response, Plaintiff argues the Casino is one of the top gaming destinations in the Denver metro area, and that the gaming industry in Colorado is highly regulated. It also contends the public has an interest in licensed gaming being conducted honestly and competitively. Dkt. 52, p.12. All this may very well be true, but it is not related to the alleged wrong in this case: Defendants' purported failure to pay Plaintiff the license fees due and owing. There are no allegations regarding other consumers injured by this conduct nor any allegations that Defendants operated MAO's Streak tables—as it concerns other gamblers—in a dishonest or

5

noncompetitive manner. Indeed, this matter arises from a licensing agreement between at least two private parties. The fact that members of the public visit the Casino or that the gaming industry is highly regulated does not turn a private dispute into one that impacts the public. *See Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 155–56 (Colo. 2007) ("Under the CCPA, it is not enough that the defendant's industry affects the public interest. . . .[T]o constitute the public impact contemplated by the CCPA, the challenged *practice* must significantly impact the public.") (emphasis in original).

Because the alleged wrong in this case is private in nature, this claim is dismissed with prejudice.

**2.    Fed. R. Civ. P. 8 Dismissal**

Turning to the remaining claims in this action, the Court *sua sponte* raises the issue of whether the Amended Complaint complies with the "short and plain statement" requirements of Rule 8 of the Federal Rules of Civil Procedure. *See Rodriguez v. Nationwide Homes, Inc.*, 756 F. App'x 782, 785 (10th Cir. 2018) ("If a complaint fails to meet the[ ] basic pleading requirements, a district court may dismiss the action *sua sponte* for failure to comply with Rule 8."). It does not.

Rule 8 requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The purpose of this rule is self-evident. A pleader must "present his claims discretely and succinctly, so that, his

6

adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985).

Here, even setting aside the fact the Amended Complaint is 99 pages long and contains many "allegations" packed into chunky paragraphs, it suffers from other deficiencies that must be addressed if Plaintiff wishes to pursue this matter. First, throughout the Amended Complaint, Plaintiff refers to "PENN and/or Ameristar" in relation to actions taken. This, however, is impermissible group pleading. Despite having named the Defendants individually in the allegations, it nevertheless makes "no distinction as to what acts are attributable to whom," which makes it "impossible for [either individual defendant] to ascertain what particular . . . acts they are alleged to have committed." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (reversing denial of motion to dismiss civil rights claims where complaint utilized group pleading).

Second, the Amended Complaint is the very definition of "shotgun pleading." Each of Plaintiff's claims incorporates by reference the allegations of its predecessors, leading to a situation where many of the counts contain irrelevant factual allegations. This style of pleading leaves it to the Court and the opposing parties to attempt to discern the precise contours of the individual claims. Unsurprisingly, Defendants and

7

the Court have struggled to differentiate what alleged facts support the various claims or—perhaps more importantly—which theory of law Plaintiff pursues to establish PENN's purported liability.

For example, in response to a previous Motion to Dismiss, Plaintiff disclaimed it was attempting to pierce the corporate veil to reach PENN. Dkt. 27, p.9. But now in its Response, Plaintiff argues "a parent company may be held liable for the wrongdoing of a subsidiary when the parent participated in that wrongful action." Dkt. 52, at p.9. Plaintiff cites, and ostensibly quotes, *Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1220 (10th Cir. 1997), for this proposition. But this quote appears nowhere in that case. In conducting its own research, the Court notes this precise quote appears in *Canal Ins. Co. v. Montello, Inc.*, 822 F. Supp. 2d 1177, 1188 (N.D. Okla. 2011), which was specifically considering a theory of agency liability. In turn, *Canal* cited *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 756 (7th Cir. 1989), which discussed both agency and alter ego liability. And even *Yoder*, upon which Plaintiff relies, was discussing the factors a court must consider before piercing the corporate veil. 104 F.3d at 1221. So which is it? Plaintiff never specifies which, if any or either, of these legal theories it relies upon with regard to PENN's purported liability.

The allegations in the Amended Complaint are similarly opaque as to the legal theory direct at PENN. The allegations largely focus on the alleged operational control PENN exerted over the Casino, which suggests Plaintiff does wish to pierce

8

the corporate veil and assert PENN was simply acting through Ameristar.[3] *See* Dkt. 25, ¶¶71 (operating the website), 72-73 (hiring the employees), 93-94 (controls payment of invoices), 95 (negotiating the Casino's license terms). But other of Plaintiff's assertions directly implicate a theory of agency. *Id.* at ¶245 ("[T]he foregoing actions constitute vicarious infringement because PENN is liable for the infringing acts of its agent, Ameristar, under Colorado Law."). This form of pleading, which avoids specifying the exact theory or theories of liability, is confusing and does not suffice.

Plaintiff seeks a substantial amount of money from Defendants. But in making such a demand, Plaintiff owes Defendants and this Court clarity as to what wrongs they have purportedly engaged in. Plaintiff may not simply lump the Defendants, allegations, and various unspecified legal theories together, hoping the Court will demand clarity later. The time for clarity is now.

Given Plaintiff's rampant use of group pleading and the confusion regarding what legal theory—or alternate theories—Plaintiff pursues against PENN, the Court finds the Amended Complaint does not comply with the requirements of Rule 8. The remaining claims are, therefore, dismissed without prejudice.

\*   \*   \*

---

[3] And in its Response, Plaintiff intimates that Ameristar may not be a viable entity, which smacks of alter ego theory. Dkt. 52, pp.4-5.

9

For the reasons shared above, the Court GRANTS the Motion to Dismiss. Dkt. 46. Plaintiff's claim pursuant to the Colorado Consumer Protection Act is dismissed with prejudice and the remaining claims are dismissed without prejudice. Within 14 days of this Order, Plaintiff is given leave to file a second amended pleading that complied with Rule 8 and addresses the deficiencies discussed above. Should no amended pleading be filed by this deadline, the Court will close this matter.[4]

DATED: July 17, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge

---

[4] Considering the fact Ameristar does not seem to dispute that the Streak tables were in use for at least some period without payment, the Court encourages the parties to engage in further conferral or explore informal resolution of this matter prior to proceeding.

10